AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1001(a) – False Statements to a Government Agency;
18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c) – Forfeiture Allegation

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**DEFENDANT - U.S**

▶ Thomas Henderson

DISTRICT COURT NUMBER

CR 19 376   JSW

**DEFENDANT**

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

U.S. State Department, Diplomatic Security Service

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form   DAVID L. ANDERSON

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   Lloyd Farnham

**IS NOT IN CUSTODY**
   Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
      summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED
AUG 15 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

}   ☐ Federal   ☐ State

Has detainer   ☐ Yes   If "Yes"
been filed?   ☐ No   give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments:

Document No.

District Court
Criminal Case Processing

**ATTACHMENT TO AO 257 PENALTY SHEET**
**United States v. Thomas Henderson**

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy)
             Maximum Term of Imprisonment:        5 Years
             Maximum Fine:                        $250,000
                    (or twice the gross gain or loss, whichever is greater)
             Maximum Term of Supervised Release:  3 Years
             Mandatory Special Assessment:        $100
             Restitution and Forfeiture as Determined by the Court

COUNT TWO:          (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)
             Maximum Term of Imprisonment:        20 Years
             Maximum Fine:                        $250,000
                    (or twice the gross gain or loss, whichever is greater)
             Maximum Term of Supervised Release:  3 Years
             Mandatory Special Assessment:        $100
             Restitution and Forfeiture as Determined by the Court

COUNTS THREE THROUGH FIFTEEN:   (18 U.S.C. § 1343 – Wire Fraud)
             Maximum Term of Imprisonment:        20 Years
             Maximum Fine:                        $250,000
                    (or twice the gross gain or loss, whichever is greater)
             Maximum Term of Supervised Release:  3 Years
             Mandatory Special Assessment:        $100
             Restitution and Forfeiture as Determined by the Court

COUNTS SIXTEEN AND SEVENTEEN:   (18 U.S.C. § 1001(a) – False Statements)
             Maximum Term of Imprisonment:        5 Years
             Maximum Fine:                        $250,000
             Maximum Term of Supervised Release:  3 Years
             Mandatory Special Assessment:        $100

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

---

### OFFENSE CHARGED

18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c) – Forfeiture Allegation

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment.

---

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

---

### DEFENDANT - U.S

▶ Kexing Hu, aka Peter Hu

DISTRICT COURT NUMBER

CR 19 376 .JSW

---

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

U.S. State Department, Diplomatic Security Service

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form   DAVID L. ANDERSON

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   Lloyd Farnham

---

### DEFENDANT

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED

AUG 15 2019

CLERK, SUSAN Y. SOONG
U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed   _____

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:   _____   Before Judge: _____

Comments:

**ATTACHMENT TO AO 257 PENALTY SHEET**
**United States v. Kexing Hu (a/k/a Peter Hu)**

COUNT ONE:     (18 U.S.C. § 371 – Conspiracy)
        Maximum Term of Imprisonment:    5 Years
        Maximum Fine:    $250,000
             (or twice the gross gain or loss, whichever is greater)
        Maximum Term of Supervised Release:    3 Years
        Mandatory Special Assessment:    $100
        Restitution and Forfeiture as Determined by the Court

COUNT TWO:     (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)
        Maximum Term of Imprisonment:    20 Years
        Maximum Fine:    $250,000
             (or twice the gross gain or loss, whichever is greater)
        Maximum Term of Supervised Release:    3 Years
        Mandatory Special Assessment:    $100
        Restitution and Forfeiture as Determined by the Court

COUNTS THREE THROUGH FIFTEEN:  (18 U.S.C. § 1343 – Wire Fraud)
        Maximum Term of Imprisonment:    20 Years
        Maximum Fine:    $250,000
             (or twice the gross gain or loss, whichever is greater)
        Maximum Term of Supervised Release:    3 Years
        Mandatory Special Assessment:    $100
        Restitution and Forfeiture as Determined by the Court

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c) – Forfeiture Allegation

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment.

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### DEFENDANT - U.S

▶ Cooper Lee

DISTRICT COURT NUMBER

CR 19 376 JSW

### DEFENDANT

#### IS *NOT* IN CUSTODY
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

#### IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction        } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

*FILED*
*SUSAN Y. SOONG*
*AUG 15 2019*
*CLERK, U.S. DISTRICT COURT*
*NORTH DISTRICT OF CALIFORNIA*
*OAKLAND OFFICE*

---

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

U.S. State Department, Diplomatic Security Service

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   DAVID L. ANDERSON

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Lloyd Farnham

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                    Before Judge:

Comments:

**ATTACHMENT TO AO 257 PENALTY SHEET**
**United States v. Cooper Lee**

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy)
                Maximum Term of Imprisonment:          5 Years
                Maximum Fine:          $250,000
                        (or twice the gross gain or loss, whichever is greater)
                Maximum Term of Supervised Release:          3 Years
                Mandatory Special Assessment:          $100
                Restitution and Forfeiture as Determined by the Court

COUNT TWO:          (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)
                Maximum Term of Imprisonment:          20 Years
                Maximum Fine:          $250,000
                        (or twice the gross gain or loss, whichever is greater)
                Maximum Term of Supervised Release:          3 Years
                Mandatory Special Assessment:          $100
                Restitution and Forfeiture as Determined by the Court

COUNTS NINE THROUGH FIFTEEN:          (18 U.S.C. § 1343 – Wire Fraud)
                Maximum Term of Imprisonment:          20 Years
                Maximum Fine:          $250,000
                        (or twice the gross gain or loss, whichever is greater)
                Maximum Term of Supervised Release:          3 Years
                Mandatory Special Assessment:          $100
                Restitution and Forfeiture as Determined by the Court



# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: OAKLAND

FILED
AUG 15 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES OF AMERICA,

V.

THOMAS HENDERSON,
KEXING HU,
a/k/a PETER HU, and
COOPER LEE,

CR 19 376 JSW

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1001(a) – False Statements to a Government Agency;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

_____
_____ Foreman

Filed in open court this _____15_____ day of AUGUST 2019

_____
_____8/15/19_____ Clerk

Bail, $ ___No bail warrant for all 3 Defendants___

Document No.
1 of
District Court
Criminal Case Processing

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

2

3                                              FILED

4                                        AUG 15 2019
                                       SUSAN Y. SOONG
5                              CLERK, U.S. DISTRICT COURT
                           NORTH DISTRICT OF CALIFORNIA
6                                  OAKLAND OFFICE

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11  UNITED STATES OF AMERICA,          )  CASE NO.  CR 19 376 JSW
                                       )
12          Plaintiff,                 )  VIOLATIONS:
                                       )  18 U.S.C. § 371 – Conspiracy;
13      v.                             )  18 U.S.C. § 1349 – Conspiracy to Commit
                                       )  Wire Fraud;
14  THOMAS HENDERSON,                  )  18 U.S.C. § 1343 – Wire Fraud;
    KEXING HU,                         )  18 U.S.C. § 1001(a) – False Statements to
15      a/k/a PETER HU, and            )  a Government Agency;
    COOPER LEE,                        )  18 U.S.C. § 2 – Aiding and Abetting;
16                                     )  18 U.S.C. § 981(a)(1)(C) and
        Defendants.                    )  28 U.S.C. § 2461(c) – Forfeiture Allegation
17                                     )
                                       )
18                                     )  OAKLAND VENUE
                                       )
19                                     )  UNDER SEAL
                                       )
20  _____)

21

22                     I N D I C T M E N T

23  The Grand Jury charges:

24                     Introductory Allegations

25      At all times relevant to this Indictment:

26      1.      The defendant THOMAS HENDERSON resided in Oakland, California, and he founded,

27  owned, and controlled San Francisco Regional Center, LLC ("SFRC"), an entity he used to promote,

28  solicit, and manage investments from foreign investors through the EB-5 visa program.  From 2011 to

INDICTMENT

1   2017, THOMAS HENDERSON, SFRC, and other related entities THOMAS HENDERSON owned and

2   controlled raised more than $110 million from more than 200 foreign investors.  These foreign investors

3   sought to be eligible for permanent legal residency in the United States under the EB-5 visa program, a

4   program created by statute and administered by the United States Citizenship and Immigration Service

5   ("USCIS").  Granting of permanent legal residency was dependent in part on the creation of jobs for

6   United States citizens and residents through the business enterprise funded by the investment, and the

7   EB-5 program requires the creation of at least 10 jobs for each foreign investor.  In order to meet the

8   goals stated in the SFRC EB-5 project business plans, and for each investor to be considered for

9   permanent legal residency, the SFRC EB-5 projects needed to create a total of more than 2,000 jobs.  As

10  described below, THOMAS HENDERSON and others abused the EB-5 visa program by making false

11  representations to the investors to solicit the investments, misappropriating and diverting the funds

12  raised from the foreign investors, and by making false statements to the USCIS.

13          2.      The investment funds were purportedly raised for seven different business enterprises,

14  and investors were told that their investment capital was going to be used to fund and capitalize the

15  business enterprise connected with their investment.  Instead of using investor funds to fund and

16  capitalize the investors' businesses, THOMAS HENDERSON, with the assistance and participation of

17  KEXING HU, COOPER LEE, and others, diverted millions of dollars of investor money.

18  Misappropriated funds were used to purchase commercial properties controlled by THOMAS

19  HENDERSON and his associates, including the 2011 purchase of the "Tribune Tower," a historic

20  commercial building in downtown Oakland.  Investor funds were used to purchase other commercial

21  buildings in Oakland, including the "I. Magnin Building" located at 2001 Broadway, the "Dufwin

22  Building" located at 519 17th Street, and a warehouse located at 1700 20th Street.  Investor funds were

23  also used to purchase a dairy product processing plant in Tipton, California.

24          3.      Nearly all of the investor funds raised by THOMAS HENDERSON through

25  SFRC-sponsored EB-5 projects were improperly comingled into SFRC bank accounts controlled by

26  THOMAS HENDERSON, leading to the misappropriation of funds for purposes other than each

27  investor's chosen business venture.  Investor funds were used to start and fund business ventures

28  separate from the existing EB-5 projects, including restaurants, a website marketing company, an

1  athletic shoe company, a sausage company, and other ventures in which THOMAS HENDERSON and

2  his associates had or intended to have an ownership interest. Other funds were misappropriated from

3  newer EB-5 projects to fund the operation of prior, money-losing EB-5 ventures, contrary to what

4  investors were told about the use of their investment capital. The investors in six of the seven EB-5

5  projects have lost most of their investment capital, and many investors are unlikely to receive permanent

6  legal residency because the SFRC EB-5 projects in which they invested were not sufficiently capitalized

7  and failed to create new jobs.

8                              The EB-5 Visa Program

9      4.      United States Citizenship and Immigration Services ("USCIS") is a component of the

10  United States Department of Homeland Security that, among other functions, issues visas and residency

11  permits for foreign nationals. USCIS administers a federal immigration program called the

12  Employment-Based Immigration, Fifth Preference Category, referred to as the EB-5 visa program. The

13  EB-5 program was created by the U.S. Congress in 1990 to promote economic growth and job creation

14  in the United States by encouraging foreign investment.

15      5.      The EB-5 program allows foreign nationals and their immediate family members a path

16  to permanent residency in the United States by investing $1 million in a New Commercial Enterprise as

17  defined by USCIS. If the New Commercial Enterprise is located in a Targeted Employment Area,

18  which USCIS defines as a rural area or area experiencing unemployment of at least 150 percent of the

19  national average, the minimum investment amount under the EB-5 program is lowered to $500,000.

20  Certain areas in the Northern District of California have been designated as Targeted Employment

21  Areas, including portions of Oakland, California.

22      6.      The EB-5 process for a foreign investor (also referred to as the "Beneficiary" of the visa

23  program) starts with submission of a Form I-526, Immigrant Petition by Alien Investor, on behalf of the

24  investor. Among other things, the Form I-526 requires the identification and a description of the

25  Commercial Enterprise that will receive the investment by the Beneficiary. In addition to the Form

26  I-526, the Beneficiary must also submit supporting documentation providing evidence of establishment

27  of a lawful business entity; evidence that the Beneficiary has invested or is in the process of investing

28  the required amount and that the capital was obtained through lawful means; evidence that the

INDICTMENT                                   3

1   Beneficiary's investment in the enterprise will create at least 10 full-time positions for U.S. citizens,

2   permanent residents, or aliens lawfully authorized to be employed; and evidence that the Beneficiary

3   will be engaged in the management of the enterprise.  If USCIS determines that the Beneficiary and the

4   described Commercial Enterprise qualifies for the EB-5 program, it approves the Form I-526 petition

5   and directs the Beneficiary to submit the Form I-485, Application to Register Permanent Residence or

6   Adjust Status.  If this application is approved, the Beneficiary is granted Conditional Permanent

7   Residency for a period of two years.

8          7.     In order to remove the conditions and obtain permanent residency for the Beneficiary and

9   immediate family, about two years after the Beneficiary has obtained Conditional Permanent Residency

10  status the Beneficiary must file the Form I-829, Petition by Entrepreneur to Remove Conditions.   The

11  Form I-829 requires, among other things, supporting documentation and evidence regarding the date and

12  amount of investment by the Beneficiary; the number of jobs created attributable to the Beneficiary's

13  capital investment; and evidence that the commercial enterprise exists and was sustained throughout the

14  period of conditional permanent residence.  If the Form I-829 petition is approved, USCIS directs the

15  beneficiary to a USCIS district office to obtain permanent residency cards.

16         8.     Regional Centers are defined by USCIS as any economic entity, public or private, which

17  is involved with the promotion of economic growth, improved regional productivity, job creation, and

18  increased domestic capital investment.  Started by Congress in 1992 as a pilot program, a Regional

19  Center may sponsor EB-5 projects. Under the Regional Center program, each Beneficiary under the

20  EB-5 program must invest in a particular New Commercial Enterprise, but EB-5 projects sponsored by a

21  Regional Center can use a more expansive definition of job creation that allows for "direct" and

22  "indirect" jobs.  In order to be designated as a Regional Center by USCIS, the applicant submits the

23  Form I-924, Application for Regional Center.  Among other things, the Form I-924 requires the name

24  and identifying information for the Regional Center's principal; and a description of the Regional

25  Center's activities; and information regarding type of industries it will promote.   In addition to the Form

26  I-924, the principal of the Regional Center must also submit supporting documentation and evidence,

27  including a business plan that identifies fees, profits, surcharges, or other remittances that will be paid to

28  the Regional Center or any of its principals or agents.

<u>San Francisco Regional Center and the EB-5 Projects</u>

9.      San Francisco Regional Center, LLC ("SFRC") was a California limited liability corporation owned by THOMAS HENDERSON and others, and controlled by THOMAS HENDERSON.  SFRC was approved by USCIS to operate as a Regional Center on or about November 30, 2011.  From in or about November 2011 until in or about March 2017, when SFRC was placed under the control of a court-appointed receiver, SFRC was located and operated in Oakland, California. During that time, SFRC was a sponsoring Regional Center affiliated with seven EB-5 projects, and from 2011 through 2016 SFRC solicited and received funds from foreign investors.  Through SFRC and in his individual capacity, THOMAS HENDERSON had direct or indirect ownership interests in, and had legal control over, each of the limited partnerships that purported to own and operate the EB-5 projects.

10.     Comprehensive Care of Oakland, LP ("CCOO") was an EB-5 project that obtained more than $4 million from foreign investors from 2011 to 2013 during the time it was sponsored by SFRC. CCOO owned and operated an acute care nursing facility in Oakland, California.  THOMAS HENDERSON partly owned and exercised control over CCOO through SFRC. CCOO raised investor money first as a stand-alone EB-5 project that was not affiliated with a USCIS-approved regional center, then beginning in or about 2011, as a project affiliated with and sponsored by SFRC.

11.     CallSocket, LP ("CallSocket I") was an EB-5 project sponsored by SFRC that obtained more than $19 million from foreign investors from in or about 2012 to 2013.  According to documents provided to foreign investors and USCIS, CallSocket I was intended to start and operate a call center business providing third party customers with services including customer support and telemarketing. THOMAS HENDERSON partly owned and controlled CallSocket I through his ownership and control of SFRC.  CallSocket I operated in the Tribune Tower building in Oakland.

12.     CallSocket II, LP ("CallSocket II") was an EB-5 project sponsored by SFRC that obtained more than $17 million from foreign investors from in or about 2012 to 2014.  According to documents provided to foreign investors and USCIS, CallSocket II was also intended to operate a call center business providing third party customers with services including sales and customer support, though it would operate in a separate location than CallSocket I and would function as a separate partnership.  THOMAS HENDERSON partly owned and controlled CallSocket II through his

INDICTMENT                                    5

1   ownership and control of SFRC.  CallSocket II operations began in the Tribune Tower in Oakland.

2       13.   CallSocket III, LP ("CallSocket III") is an EB-5 project sponsored by SFRC that obtained

3   more than $21 million from foreign investors from in or about 2013 to 2016.  According to documents

4   provided to foreign investors and USCIS, CallSocket III was also intended to operate a call center

5   business providing third party customers with services including sales and customer support, though it

6   would operate in a separate location than CallSocket I and CallSocket II, and would function as a

7   separate partnership.  THOMAS HENDERSON partly owned and controlled CallSocket III through his

8   ownership and control of SFRC. CallSocket III had not begun any significant operations before a court-

9   appointed receiver took control of the CallSocket entities in March 2016.

10      14.   North American 3PL, LP ("NA3PL") is an EB-5 project sponsored by SFRC that

11  obtained more than $23 million from foreign investors from in or about 2014 to 2016.  According to

12  documents provided to foreign investors and USCIS, NA3PL would loan the entire amount of the

13  investors' capital to another entity, NA3PL, LLC, which would create jobs using the investment capital

14  by starting and operating a warehousing and logistics business in Oakland, California. THOMAS

15  HENDERSON partly owned and controlled NA3PL through his ownership and control of SFRC, and he

16  partly owned and controlled the job-creating entity NA3PL, LLC. NA3PL, LLC operated in a

17  warehouse at 1700 20th Street, Oakland, California.

18      15.   West Oakland Plaza, LP is an EB-5 project sponsored by SFRC that obtained more than

19  $2 million from foreign investors from in or about 2015 to 2016.  According to documents provided to

20  foreign investors and USCIS, West Oakland Plaza would loan the entire amount of the investors' capital

21  to another job-creating entity intended to be retail grocery and food service business operating in a

22  shopping mall in Oakland, California. THOMAS HENDERSON partly owned and controlled West

23  Oakland Plaza through his ownership and control of SFRC.

24      16.   California Gold Medal, LP ("CGM") is an EB-5 project sponsored by SFRC that

25  obtained more than $24 million from foreign investors from in or about 2015 to 2017.  According to

26  documents provided to investors and USCIS, CGM would loan the entire amount of the investors'

27  capital to another entity, Crystal Golden, LLC, which would create jobs by starting and operating a milk

28  processing, packaging, and exporting business.  THOMAS HENDERSON partly owned and controlled

1  CGM and Crystal Golden, LLC through his ownership and control of SFRC.  CGM funds were used to

2  purchase a dairy processing plant in Tipton, California.  The milk processing business had not begun any

3  significant operations before a court-appointed receiver took control of the business in March 2017.

4                        Payments by Foreign Investors to SFRC's EB-5 Projects

5          17.    SFRC employees and sales agents actively solicited foreign investors in these seven

6  projects, including by operating SFRC offices in Shanghai, China, Beijing, China, and Ho Chi Min City,

7  Vietnam, and paying fees and commissions to brokers who solicited investors.  From 2011 to 2017,

8  THOMAS HENDERSON, through SFRC and the EB-5 project entities listed above, obtained more than

9  $110 million dollars from more than 200 foreign investors.  Most of the investors were residents of the

10 People's Republic of China.  Other investors were residents of India and Vietnam.

11         18.    Each of these foreign investors paid approximately $500,000 in capital, and many paid

12 additional fees, called "syndication fees" in offering documents, of up to $60,000 per investment.

13 According to the USCIS regulations governing the EB-5 visa program and consistent with the

14 representations made to investors and USCIS in connection with the SFRC projects, the capital

15 investment obtained from foreign investors must be used to capitalize the New Commercial Enterprise

16 corresponding to that investor.  USCIS regulations and guidance stated that administrative costs related

17 to operation of the regional center, and any expenses or commissions paid for finding and soliciting

18 investors, must not be paid with the capital investment amount. The investment documents provided by

19 SFRC to the investors and prepared at the direction of THOMAS HENDERSON indicated that the

20 capital investment would not be used for commissions, expenses associated with marketing and offering

21 the investment, and expenses for forming the partnerships that would obtain EB-5 project investments.

22         19.    Each investor in the seven EB-5 projects received, among other documents and

23 information, a Private Placement Memorandum that described the investment and the use of funds.  For

24 example, the California Gold Medal Private Placement Memorandum stated that the investment capital

25 raised by CGM, up to $50 million for the offering, will be used for a $50 million loan to the job creating

26 entity Crystal Golden, LLC to fund the development, construction and initial operating expenses of a

27 milk processing and packaging facility in Tipton, California.  In another example, the NA3PL Private

28 Placement Memorandum stated that the investment capital raised by NA3PL, up to $20 million for the

INDICTMENT                                7

1    offering, will be used for a $20 million loan to the job creating entity NA3PL, LLC to fund the

2    development, construction and initial operating expenses of a warehouse and logistics facility in

3    Oakland, California.

4         20.    SFRC employees, under the direction and supervision of THOMAS HENDERSON,

5    prepared business plans for each EB-5 project, and these business plans were submitted to USCIS in

6    support of Form I-526 petitions submitted by each foreign investor.  These business plans described the

7    proposed use of investor capital paid by the foreign investors.  Each plan described using the funds to

8    capitalize the new commercial enterprise and to create jobs.

                                    The Defendants

10        21.    Defendant THOMAS HENDERSON, age 70, resided in Oakland, California.  He

11   founded, owned, and controlled SFRC, and through SFRC he owned and controlled each of the seven

12   EB-5 projects and related entities described above.  From 2010 to 2017, he was the managing member

13   of SFRC, and either THOMAS HENDERSON or SFRC was the managing member or general partner of

14   the entities related to the EB-5 projects as well as numerous entities separate from the EB-5 projects that

15   also received funds from foreign investors' capital.

16        22.    Defendant KEXING HU, also known as Peter Hu, age 40, resided in Ningbo, China.  He

17   operated and managed the SFRC office in Shanghai, China that solicited foreign investors for the SFRC

18   EB-5 projects in China.  HU was paid by SFRC, directly and through two entities he controlled.

19        23.    Defendant COOPER LEE, age 42, resided in Oakland, California.  A company he owned

20   and controlled received funds from foreign investors' capital though it was not an approved or disclosed

21   EB-5 project. He also owned and controlled Network Technologies International, Inc. and Binary

22   Software Solutions, Inc., entities that received approximately $2.4 million from capital paid by

23   California Gold Medal investors. He personally withdrew more than $290,000 of those diverted funds.

                                  The Scheme to Defraud

25        24.    From a time unknown but no later than December 2011 and continuing through in or

26   about March 2017, defendants THOMAS HENDERSON, KEXING HU, COOPER LEE, and others,

27   engaged in a scheme, plan, and artifice to defraud investors as to a material matter, and to obtain money

28   and property by means of materially false and fraudulent pretenses, representations, and promise, by

INDICTMENT                          8

1  making materially false and misleading statements, and failing to disclose material facts with a duty to

2  disclose.

3       25.    The objectives of the scheme to defraud were, among other objectives, (a) to induce

4  foreign investors to invest in and pay fees to the EB-5 projects by making false claims that the investor

5  funds would be used according to project business plans, offering materials, and other documents and

6  information provided to investors and submitted to USCIS, (b) to discourage investors from

7  withdrawing their investments by making false statements about the use of investor funds, ownership of

8  property purchased with investor funds, and other aspects of the investment and operation of the

9  businesses, (c) to misappropriate investor money and fees paid into later EB-5 projects to pay for earlier

10 EB-5 projects that were losing money or to fund future projects unrelated to any approved EB-5 project,

11 (d) to misappropriate investor money for unauthorized and undisclosed uses, including other business

12 ventures and the purchase of THOMAS HENDERSON's personal residence in Oakland, California; and

13 (e) to conceal the manner in which money from investors was being used through false statements to

14 investors, USCIS, and others.

15      26.    Through the scheme to defraud, and false statements and omissions, THOMAS

16 HENDERSON, KEXING HU, COOPER LEE, and others, obtained money and property.

17      27.    In furtherance of the scheme to defraud, THOMAS HENDERSON, KEXING HU, and

18 COOPER LEE used a variety of means and methods, including:

19      a.    Making false statements in the solicitation of investors for the seven EB-5 projects,

20            including false statements regarding the use of funds, the value and ownership of

21            properties that THOMAS HENDERSON had purchased with investor funds, the manner

22            in which investor funds would be withdrawn from escrow accounts, and false guarantees

23            of return of investor capital;

24      b.    Diverting investor money from CCOO to SFRC in order to purchase a commercial

25            building located at 409 13th Street in Oakland, California, known as the "Tribune

26            Tower," contrary to the offering documents provided to CCOO investors and submitted

27            to USCIS, and failing to disclose the diversion of funds paid by investors in CCOO;

28      c.    Diverting investor funds from CallSocket LP, CallSocket II, LP, and CallSocket III, LP

1    to SFRC, and then using those funds to pay for business ventures and undisclosed

2    expenses unrelated to the EB-5 projects described to USCIS and the investors, including

3    the diversion of more than $2 million to start and operate two Oakland, California

4    restaurants from in or about 2012 through 2015;

5    d.    Diverting investor funds to the purchase of a house in Oakland, California owned by

6          THOMAS HENDERSON and another individual and used as his personal residence, and

7          to fund an account used to make the interest payments on the mortgage loan for that

8          residence;

9    e.    Making false statements, and providing false bank statements, to CallSocket II investors

10         to make it appear that the CallSocket II investor funds had not been transferred to SFRC

11         and already spent on unauthorized and undisclosed expenses;

12   f.    Diverting more than $17 million of the $21 million raised from investors for the North

13         America 3PL, LP EB-5 project, and using those funds for other projects and businesses,

14         including more than $8 million used to fund the operation of CallSocket I and the other

15         CallSocket projects, and transferring funds to entities in which THOMAS HENDERSON

16         had an ownership interest.

17   g.    Diverting more than $2.4 million in investor capital provided by investors in the

18         California Gold Medal LP EB-5 project, routing the funds through entities owned and

19         controlled, directly or indirectly, by COOPER LEE, and spending more than $1.6 million

20         of these diverted funds to continue to fund other businesses outside the EB-5 projects in

21         which THOMAS HENDERSON and LEE had an ownership interest.

22   h.    Making false statements and providing false written materials that were provided to

23         USCIS in order to secure the approval of the foreign investors' petitions for Conditional

24         Permanent Residency, including falsely stating that investment funds would be used for

25         the start-up and operation of the EB-5 project described in the submitted business plans.

26   <u>COUNT ONE:</u>        (18 U.S.C. § 371 – Conspiracy)

27   Paragraphs 1 through 27 of this Indictment are re-alleged and incorporated as if fully set forth

28   here.

INDICTMENT                                      10

28.     Beginning no later than in or about December 2011, and continuing until at least in or about March 2017, in the Northern District of California and elsewhere, the defendants,

THOMAS HENDERSON,
KEXING HU, a/k/a "Peter Hu," and
COOPER LEE,

and others, did knowingly conspire to commit offenses against the United States, namely (a) devising and intending to devise a scheme and artifice to defraud as to a material matter and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; (b) making a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, an agency within the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(2); and (c) engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

29.     The objectives of the conspiracy were, among other things, (a) to obtain investment funds from foreign investors using false and misleading statements, and omissions of material facts; (b) to divert investor funds raised for specific EB-5 projects to other EB-5 projects, to purchase properties owned or controlled by THOMAS HENDERSON, and to fund other business ventures; (c) to discourage investors from withdrawing funds from EB-5 projects by misleading investors about the use of funds and business prospects of the enterprise; (d) to obtain USCIS approval of investor petitions by providing false information and making false statements regarding the use of investor funds and other facts; (e) to divert foreign investor funds from the NA3PL and California Gold Medal EB-5 projects to other entities and business ventures and for personal use; (f) to disguise the diversion of CGM investor capital through sham transactions supported by fake contracts and invoices, and by using sham entities to disguise the ownership and control of bank accounts; and (g) to launder the proceeds of unlawful wire transfers from

//

1  CGM through multiple bank accounts controlled by THOMAS HENDERSON, COOPER LEE, and

2  others.

3  <center>Overt Acts</center>

4      30.    In furtherance of the conspiracy and to effect the objects thereof, in the Northern District

5  of California and elsewhere, THOMAS HENDERSON, KEXING HU, COOPER LEE, and others

6  committed the following overt acts:

7      a.    In or about December 2011, THOMAS HENDERSON directed a wire transfer of

8      $1,340,000 from an SFRC account in order to purchase a commercial building located at

9      409 13th Street in Oakland, California, known as the "Tribune Tower."

10      b.    In or about November 2012, THOMAS HENDERSON directed a wire transfer of

11      $2,549,031 from an SFRC account to a title company for the purchase of a warehouse

12      property at 1700 20th Street in Oakland, California.

13      c.    On or about July 15, 2013, THOMAS HENDERSON directed the release from an escrow

14      account and wire transfer to an SFRC account investment capital paid by a foreign

15      investor in CallSocket II.

16      d.    In or about August 2013, THOMAS HENDERSON signed a check drawn on an SFRC

17      account for $20,000 to pay startup costs for a restaurant in Oakland, California.

18      e.    On or about July 3, 2014, THOMAS HENDERSON directed a wire transfer of $15,000

19      from an SFRC account to an account in the name of an entity that operated a restaurant in

20      Oakland, California.

21      f.    On or about October 7, 2014, THOMAS HENDERSON directed the release from an

22      escrow account and wire transfer to an SFRC account investment capital paid by a

23      foreign investor in CallSocket III.

24      g.    On or about October 31, 2014, THOMAS HENDERSON obtained electronic copies of

25      bank statements for accounts controlled by THOMAS HENDERSON and in the name of

26      CallSocket II, and sent those bank statement copies to HU and others.

27      h.    On or about November 4, 2014, HU made false and misleading statements to CallSocket

28      II investors during a meeting in Shanghai, including providing altered and falsified bank

statements for an account in the name of CallSocket II that purported to show a balance of that account and falsely telling investors that CallSocket II had secured an important business relationship.

i.  In or about April 2015 and in or about November 2015, THOMAS HENDERSON caused materials and information to be submitted to USCIS, including a declaration signed by THOMAS HENDERSON, stating that investor funds raised for the NA3PL EB-5 project would be loaned to NA3PL, LLC to fund the startup and operation of the NA3PL warehouse and logistics business in Oakland, California.

j.  In or about October 2015, THOMAS HENDERSON directed a wire transfer of $2,550,000 from an account in the name of California Gold Medal, LP to Central California Farms, LLC, in order to purchase a dairy processing facility in Tipton, California.

k.  On or about January 11, 2016, THOMAS HENDERSON directed the release from an escrow account and wire transfer to an SFRC account investment capital paid by a foreign investor in NA3PL.

l.  In or about November 2016, THOMAS HENDERSON caused materials and information to be submitted to USCIS stating that investor funds raised for the California Gold Medal EB-5 project would be loaned to Crystal Golden, LLC to fund the startup and operation of the milk processing and packaging business in Tipton, California.

m.  On or about August 12, 2016, LEE caused to be incorporated Venture Capital Partners, an entity later used, at LEE's direction, to divert funds paid by foreign investors of California Gold Medal to businesses owned or controlled by THOMAS HENDERSON.

n.  On or about September 12, 2016, LEE caused to be incorporated Binary Software Solutions, Inc., an entity later used by LEE to divert funds paid by foreign investors of California Gold Medal to LEE and businesses owned or controlled by THOMAS HENDERSON.

o.  On or about September 21, 2016, THOMAS HENDERSON caused $77,396 to be wired from an account in the name of California Gold Medal to an account in the name of

1    Binary Software Solutions, Inc., an entity owned and controlled by LEE.

2    p.    On or about January 9, 2016, LEE caused $45,000 to be wired from an account in the

3    name of Venture Capital Partners, Inc. to an account in the name of Immedia, LLC dba

4    SFRC controlled by THOMAS HENDERSON.

5    All in violation of Title 18, United States Code, Section 371.

6    COUNT TWO:    (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

7    Paragraphs 1 through 30 of this Indictment are re-alleged and incorporated as if fully set forth

8    here.

9    31.    Beginning on or about December 2011 and continuing through on or about March 2017,

10    in the Northern District of California and elsewhere, the defendants,

11    THOMAS HENDERSON,
     KEXING HU, a/k/a "Peter Hu," and

12    COOPER LEE,

13    and others, did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to

14    a material matter and to obtain money and property by means of materially false and fraudulent

15    pretenses, representations, and promises, and by omission and concealment of material facts, and, for the

16    purpose of executing such scheme or artifice and attempting to do so, did transmit, and cause to be

17    transmitted, by means of wire communication in interstate and foreign commerce, certain writings,

18    signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

19    All in violation of Title 18, United States Code, Section 1349.

20    COUNTS THREE THROUGH EIGHT:    (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

21    Paragraphs 1 through 31 of this Indictment are re-alleged and incorporated as if fully set forth

22    here.

23    32.    Beginning on or about November 2011 and continuing through on or about March 2017,

24    in the Northern District of California and elsewhere, the defendants,

25    THOMAS HENDERSON and
     KEXING HU, a/k/a "Peter Hu,"

26

27    knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and

28    artifice to defraud as to a material matter, and to obtain money and property by means of materially false

INDICTMENT                    14

and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

33.    On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, the defendants,

THOMAS HENDERSON and
KEXING HU, a/k/a "Peter Hu,"

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, wire communications as set forth below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| THREE | 8/27/2014 | Wire transfer of $566,300 from an account in the name of San Francisco Regional Center, LLC to an account in the name of Ubik Solution Ltd. |
| FOUR | 10/30/2014 | An electronic mail transmission from Oakland, California sent by Thomas Henderson to Shanghai, China received by Kexing Hu and others attaching copies of bank statements related to CallSocket II |
| FIVE | 11/10/2014 | Wire transfer of $443,925 from an account in the name of Thomas Henderson to an account in the name of an escrow company for the purchase of a residential property located at 666 Mandana Boulevard, Oakland, California |
| SIX | 2/27/2015 | Wire transfer of $150,000 from an account in the name of San Francisco Regional Center, LLC to an account in the name of Kexing Hu |
| SEVEN | 9/11/2015 | Wire transfer of $500,050 from an account in the name of a foreign investor in CallSocket III, LP, to an account in the name of CallSocket III, LP |
| EIGHT | 2/18/2016 | Wire transfer of $250,004.00 from an account in the name of a foreign investor in North American 3PL, LP, to an account in the name of an escrow company used by SFRC to receive investor funds |

All and each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS NINE THROUGH FIFTEEN:     (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

Paragraphs 1 through 33 of this Indictment are re-alleged and incorporated as if fully set forth here.

INDICTMENT                                        15

34.     Beginning on or about August 2016 and continuing through on or about March 2017, in the Northern District of California and elsewhere, the defendants,

THOMAS HENDERSON,
KEXING HU, a/k/a "Peter Hu," and
COOPER LEE

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

35.     On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, the defendants,

THOMAS HENDERSON,
KEXING HU, a/k/a "Peter Hu," and
COOPER LEE,

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, wire communications as set forth below:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| NINE | 8/12/2016 | Wire transfer of $75,000 from an account in the name of California Gold Medal, LP to an account in the name of Network Technologies International, Inc. |
| TEN | 8/19/2016 | Wire transfer of $499,098 from an account in the name of an escrow company used by SFRC to receive investor funds, held for the benefit of a foreign investor, to an account in the name of California Gold Medal, LP |
| ELEVEN | 8/24/2016 | Wire transfer of $87,846 from an account in the name of California Gold Medal, LP to an account in the name of Network Technologies International, Inc. |
| TWELVE | 9/21/2016 | Wire transfer of $77,396 from an account in the name of California Gold Medal, LP to an account in the name of Binary Software Solutions, Inc. |
| THIRTEEN | 1/9/2017 | Wire transfer of $45,000 from an account in the name of Venture Capital Partners, Inc. to an account in the name of Immedia, LLC dba SFRC |
| FOURTEEN | 1/24/2017 | Wire transfer of $41,111 from an account in the name of California Gold Medal, LP to an account in the name of Network Technologies International, Inc. |

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| FIFTEEN | 1/24/2017 | Wire transfer of $68,093 from an account in the name of California Gold Medal, LP to an account in the name of Binary Software Solutions, Inc. |

All and each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT SIXTEEN:   (18 U.S.C. § 1001(a)(2) – False Statement to a Government Agency)

Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated as if fully set forth here.

36.   On or about November 1, 2015, in the Northern District of California, the defendant,

THOMAS HENDERSON,

did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States by preparing and signing a declaration, and causing it to be presented to the U.S. Citizenship and Immigration Service.  The declaration stated that EB-5 investment capital raised from NA3PL investors would be loaned to a new commercial enterprise, NA3PL, LLC, to start and operate a warehouse and logistics business.  This statement was false because, as THOMAS HENDERSON then and there knew, he had directed the misappropriation of more than $15 million from the NA3PL EB-5 project for other businesses and expenses, and those investment funds had not been loaned to NA3PL, LLC, nor used to start and operate the logistics and warehouse business.

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNT SEVENTEEN:     (18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency)

Paragraphs 1 through 36 of this Indictment are re-alleged and incorporated as if fully set forth here.

37.   On or about November 8, 2016 in the Northern District of California, the defendant,

THOMAS HENDERSON,

did willfully and knowingly make and use a false, fictitious, and fraudulent writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States, by causing to be prepared and presented to the U.S. Citizenship and Immigration Service a project summary and other

INDICTMENT                                  17

1   documents in support of a Form I-526 petition.  The documents prepared and presented stated that EB-5

2   investment capital raised from investors in the California Gold Medal, LP EB-5 project would be loaned

3   to a new commercial enterprise, Crystal Golden, LLC, to start and operate a milk processing and

4   packaging business.  This statement was false because, as THOMAS HENDERSON then and there

5   knew, he had directed the misappropriation of more than $1 million from the California Gold Medal

6   EB-5 project for other businesses and expenses, and those investment funds had not been loaned to

7   Crystal Golden, LLC, nor used to start and operate the milk processing and packaging business.

8         All in violation of Title 18, United States Code, Section 1001(a)(3).

9   FORFEITURE ALLEGATION:        (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

10        The allegations contained in this Indictment are re-alleged and incorporated by reference for the

11   purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title

12   28, United States Code, Section 2461(c).

13        Upon conviction for any of the offenses set forth in Counts One through Fifteen of this

14   Indictment, the defendants,

15                      THOMAS HENDERSON,
                     KEXING HU, a/k/a "Peter Hu," and
16                         COOPER LEE,

17   shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

18   Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived

19   from proceeds the defendant obtained directly and indirectly, as the result of those violations, including

20   but not limited to a money judgment equal to the gross proceeds the defendant obtained directly or

21   indirectly as a result of those violations.

22        If any of the property described above, as a result of any act or omission of the defendant:

23            a.      cannot be located upon exercise of due diligence;

24            b.      has been transferred or sold to, or deposited with, a third party;

25            c.      has been placed beyond the jurisdiction of the court;

26            d.      has been substantially diminished in value; or

27            e.      has been commingled with other property which cannot be divided without

28                   difficulty,

INDICTMENT                         18

1   the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

2   United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

3         All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code,

4   Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

6   DATED:                                          A TRUE BILL.

8   8/15/19

                                                    FOREPERSON

9   DAVID L. ANDERSON
10  United States Attorney

12  LLOYD FARNHAM
13  Assistant United States Attorney

INDICTMENT                          19