UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS HENDERSON,<br><br>Defendant. | Case No. 19-cr-00376-RS-1<br><br>**ORDER RE GUIDELINE CALCULATION** |

Sentencing in this matter is presently set for January 17, 2023. The parties dispute the applicable Total Offense Level applicable under the Sentencing Guidelines. The government urges adoption of the calculation provided in the Presentence Report which would result in a level of 30, with a corresponding sentencing range of 97 to 121 months.[1] Defendant argues the appropriate offense level is 28, with a resulting sentencing range of 78 to 97 months. The difference in the parties' positions lie in the amount to be assigned as the monetary loss associated with the wrongdoing.

Under the Guidelines, loss "is the greater of actual or intended loss." U.S.S.G. § 2B1.1(b) Appl. Note 3(A). Actual loss "means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. Note 3(A)(i). Intended loss includes "the pecuniary harm that the defendant

---

[1] As provided in the Plea Agreement, however, the government is only recommending a sentence of 48 months.

purposely sought to inflict." *Id*. Note 3(A)(ii). Reasonably foreseeable pecuniary harm is monetary harm "that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id*. Notes 3(A)(iii) and (iv). "The guidelines do not present a single universal method for loss calculation under § 2B1.1." *United States v. Zolp*, 479 F.3d 715, 718 (9th Cir. 2007). The court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1(b) Note 3(C). The Ninth Circuit has said that district courts should "take a realistic, economic approach to determine what losses the defendant truly caused or intended to cause, rather than the use of some approach which does not reflect the monetary loss." *United States v. Crandall*, 525 F.3d 907, 912 (9th Cir. 2008) (quotations omitted).

In the plea agreement the parties stipulated to a loss amount either between $9.5 and $25 million (+20 levels) or between $25 and $65 million (+22 levels). Plea Agreement ¶ 7. The government now contends the loss was $34,048,955.67, consisting of investor funds taken from three of the later EB-5 projects to pay for older projects or outside businesses. Defendant contends the loss was only $4,828,468.07, although he acknowledges that under the plea agreement he has conceded a loss level of at least $9.5 million.

On December 5, 2022, the court heard argument on the loss calculation issue and received live testimony from defendant's expert witness Anne M. Layne, who calculated the figure offered by defendant, and who offered certain criticisms of the government's calculations.[2] While Layne raised a number of minor issues with the government's calculations, she ultimately acknowledged that her own calculations would be in the same range as the government's if she included as losses

---

[2] Defendant also submitted a written expert report from Curtis Novy opining that the receiver appointed in private state court litigation involving defendant's enterprises, who later became the receiver in the SEC's civil enforcement action, disposed of certain commercial real properties belonging to the EB-5 entities at unnecessarily low prices. Defendant argues that had more appropriate marketing arrangements and efforts been made, additional monies could have been returned to investors, mitigating their losses. The sales in question were consummated under the supervision of a state court judge. Defendant's speculation that higher sales prices might have been obtainable is not an appropriate consideration in measuring loss, particularly since neither the government's calculations nor defendant's calculations incorporate the sales proceeds.

those monies transferred out of the three later EB-5 projects into the accounts of San Francisco Regional Center or other EB-5 entities. Defendant's position, supported by Layne, is that those transfers should not be considered as losses because the relevant investment documents permitted such "intercompany transactions." Layne suggests there is nothing unusual or inherently wrongful in intercompany borrowing and sharing of certain kinds of expenses. She acknowledges, though, it does not appear any of the entities created and/or maintained loan documentation such as promissory notes or interest records.

Whatever authority the investment documents may have provided to engage in certain types of intercompany transfers under appropriate circumstances, the government has met its burden to show that the transfers in issue here are properly included in the loss calculation. The record amply supports a conclusion that investors in the three later entities suffered those losses when those moneys were transferred out to support earlier projects, to the detriment of the later projects. Accordingly, the government's estimate of the losses at approximately $34 million will be adopted, a number well over the $25 million threshold that triggers a twenty-two-level adjustment under Guideline § 2B1.1.

The parties otherwise are in agreement with the guideline calculations set forth in the Presentence Report, and those calculations will be adopted. The complete calculation therefore is as follows:

Base Offense Level: The guideline for a violation of 18 U.S.C. § 1349 is U.S.S.G. §2X1.1. Pursuant to §2X1.1(a), since the underlying offense is Wire Fraud, 2B1.1 is referenced when determining the offense level. The base offense level is **7.**

Specific Offense Characteristics: Pursuant to U.S.S.G. §2B1.1(b)(1)(L), because the loss in this case falls between $25,000,000 and $65,000,000, a **22**-level enhancement applies.

Specific Offense Characteristics: Pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i), because the offense involved more than 10 victims, a **2**-level enhancement applies.

Victim Related Adjustment: None.

<u>Adjustment for Role in the Offense</u>: Defendant was the operator of San Francisco Regional Center, managed numerous people across several different projects and directed the funds to be diverted. Pursuant to U.S.S.G. §3B1.1(c), a **2**-level enhancement applies.

<u>Adjustment for Obstruction of Justice</u>: None.

<u>Chapter Four Enhancement</u>: None.

<u>Acceptance of Responsibility</u>: Defendant has clearly demonstrated acceptance of responsibility for the offense. Pursuant to U.S.S.G. §3E1.1(a), a **2**-level *decrease* applies.

<u>Acceptance of Responsibility</u>: Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Pursuant to U.S.S.G. §3E1.1(b), a **1**-level *decrease* applies.

<u>Total Offense Level</u>: **30**

**IT IS SO ORDERED**.

Dated: December 20, 2022

_____
RICHARD SEEBORG
Chief United States District Judge